HARRY CLIFFORD OTT *v.* STATE OF MARYLAND

[No. 108, September Term, 1970.]

*Decided February 16, 1971.*

The cause was submitted to MURPHY, C.J., and ANDERSON and POWERS, JJ.

*Charles P. Brown* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Hilary D. Caplan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Harry Clifford Ott, was convicted in the Criminal Court of Baltimore by a jury of the crime of common law assault, and was sentenced to a term of one year under the jurisdiction of the Department of Correctional Services.

It is contended in this appeal that:

1) the appellant was denied a fair and impartial trial because of the opening statement and closing argument of the Assistant State's Attorney; and
2) that the evidence was insufficient to sustain the conviction, and that the State failed to prove the necessary *mens rea* to establish the guilt of the appellant.

From the evidence adduced by the State, on February

18, 1969, Leo Zimmerman, a constable with the Peoples'
Court of Baltimore City, accompanied by Edward Con-
nor, a collection agent, went to the home of Harry C. Ott
and Maxine Ott, his wife, located at 2057 Druid Park
Drive. He had in his possession a writ of *fieri facias* (com-
monly called a fi-fa) issued by Chief Judge Tippett of the
Peoples' Court of Baltimore City for the purpose of col-
lecting a judgment. Zimmerman and Connor arrived at
the Ott home at approximately 2:20 p.m. and were ad-
mitted by Mrs. Ott. Zimmerman showed her his badge
and explained to her that he was there to execute a writ,
or it could be settled by payment of the debt to Mr. Con-
nor. Present in the home at the time was David Perry, a
son of Mrs. Ott by a former marriage. About ten minutes
after their arrival, Mr. Ott arrived on the premises. He
became loud and disorderly and, although Zimmerman
showed him his badge and the writ, he refused to listen
and informed them that no matter who they were they
had better get out or he was going to kill them. Zimmer-
man told Connor to call the police and after Connor left
he tried to calm Ott down, but Ott refused to listen and
said he would throw them out. Connor returned and told
Zimmerman that he had called the police. When Ott
heard the police had been summoned, he said: "You bet-
ter all get out of here or I'm going to make you get out.
I'm going to kill you all." He then ran upstairs and re-
turned with a gun in his pocket with the butt protruding
out and his hand on the butt. At that time, he said: "I'm
going to kill all of you if you don't get out of here." As
he said this, his stepson grabbed his hand and after a
struggle disarmed him. Zimmerman testified he was
frightened as was everyone else in the room. At this time
the police arrived and upon being informed what had hap-
pened, the officer asked the stepson where the gun was,
and Perry gave it to the police officer and appellant was
placed under arrest.

The witness, Edward Connor, supported in detail the
testimony of the witness Zimmerman. He testified that
appellant refused to listen to any explanation about the

writ but became very loud and abusive and threatened to kill them. He observed appellant with the gun in his pocket and his hand on the pistol grip and at that time appellant's stepson grabbed his hand and wrestled the gun away from him. When the police wagon arrived, he ran out and called them in real quick.

Baltimore City Police Officer Richard Bernhartz testified that when he arrived appellant was very emotional, nervous and excited and was hollering. After receiving certain information, he requested the gun and Perry, Ott's stepson, got the gun and turned it over to him. When the chamber was opened, the gun contained one bullet.

This concluded the State's case. At this time the State confessed a plea of not guilty to the first count of the indictment (assault with intent to murder) and the court denied the defendant's motion for judgment of acquittal to the second count (common law assault).

Appellant's first witness was his wife, Maxine Ott. She testified that at the time of the alleged assault she was under the care of her doctor for a heart condition. She denied that she was the one who admitted Zimmerman and Connor and was under the impression that they had pushed their way in after her son had opened the door. She stated that Connor had threatened to take all her possessions and had yelled at her causing her to feel faint. She further stated that her husband arrived home at this time and ordered the two men out of the house. She said at this time it looked like Constable Zimmerman was reaching for his gun and at this point her husband ran upstairs and got a gun. She denied hearing her husband make any threats.

Appellant, testifying in his own behalf, stated that when he returned home he found Zimmerman and Connor inside the house and that Connor was standing over his wife yelling at her. He told both men to get out, and when he thought Zimmerman was reaching for his gun he ran upstairs to get his gun, claiming he thought the two men might be hold-up men. On cross-examination he admitted

to numerous other convictions of assault and disorderly conduct.

Appellant's final witness was his stepson, David Perry. He testified it was he who admitted Zimmerman and Connor to the house; that Zimmerman said something about being a constable and having a writ in his hand and asked if Mr. Ott was home. When told he was not, he said he had a matter of importance to discuss with him about furniture, and as the door was partly opened, Zimmerman completed opening the door and, together with Connor, walked in. As they entered the house, his mother, Mrs. Ott, came through the doorway from the dining room and the two men began talking with her. During the discussion the talking was louder than usual but he did not understand much about it as they were all talking at once. However, his mother did say that she was sick and had a heart condition. About 5 or 10 minutes after they arrived, his stepfather, Mr. Ott, arrived. Upon his arrival, the first thing he did was to rush up to where the discussion was taking place and tell them "to get the hell out of the house." He saw the smaller man reach inside his jacket and at that time Mr. Ott turned and ran up the steps. He ran up after him but Ott got back first. He had a gun in his hand when he got to the bottom of the steps and stuck it in his pocket. He managed to take the gun away from him. It had one bullet in it.

On cross-examination he admitted that he knew Zimmerman was a constable and that the conversation between Zimmerman, Connor and his mother was normal conversation up to the time of appellant's arrival, and while it was a little louder than usual, it was not sufficient to upset anyone. He stated that it was only after Mr. Ott arrived that the discussion became very loud. He admitted that Zimmerman and Connor tried to explain to appellant why they were there but Ott refused to listen.

On redirect examination he stated that "the loud talk and all" was Harry Ott's fault.

Appellant then renewed his motion for judgment of acquittal, which was denied.

## I

Taking appellant's contentions in inverse order, we shall first consider his contention that the evidence was insufficient to sustain the conviction, and that the State failed to prove the necessary *mens rea* to establish the guilt of the appellant.

We have consistently held that in order to overturn a judgment entered on a verdict of a jury for insufficiency of the evidence it is necessary to show that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443; *Graham v. State,* 7 Md. App. 638; *Williams and McClelland v. State,* 5 Md. App. 450.

Assault has been defined as any attempt to apply the least force to the person of another. The attempt is made when there is any action or conduct reasonably tending to create apprehension in another and that the person engaged therein is about to apply such force to him. An apparent intention to inflict a battery and an apparent ability to carry out such intention is sufficient. A specific purpose to inflict a particular injury is not necessary. General malevolence or recklessness is sufficient; but mere negligence does not suffice. *Williams v. State,* 4 Md. App. 643; Hochheimer, *Crimes and Criminal Procedure,* Sec. Ed. §§ 253, 254, 256.

The exhibition of a gun to a victim in such a manner as to cause apprehension that it would be used to inflict harm upon him is an assault. *Tender v. State,* 2 Md. App. 692.

From the evidence in this case the jury could find appellant guilty of assault. After threatening to kill Connor and Zimmerman appellant ran upstairs and returned with a revolver which was clearly visible and renewed his threat. His actions and conduct tended to create apprehension in Zimmerman and with a weapon in his posses-

sion appellant had an apparent ability to carry out his threats. Zimmerman testified he was frightened and the jury could well so find.

We further point out that it is not necessary that there be a specific purpose to do a particular injury in order to prove the necessary *mens rea*. General malevolence or recklessness is sufficient. *Williams v. State, supra*. The jury could infer general malevolence from appellant's threats to kill coupled with his obtaining the gun.

We find the evidence sufficient to sustain the conviction.

## II

Appellant contends that he was denied a fair and impartial trial because of the improper and prejudicial nature of the opening statement and closing argument made by the Assistant State's Attorney to the jury. He argues that the State's opening satement was so prejudicially argumentative as to constitute reversible error in that it created unfair prejudice in the minds of the jury.

The primary purpose of an opening statement is to explain with reasonable clarity to the trier of facts the questions involved and what the State or defense expects to prove so as to prepare the trier of the facts for the evidence to be offered. While the prosecutor should be allowed a reasonable latitude in his opening statement, he should be confined to statements based on facts that can be proved and his statement should not include facts that are inadmissible and which he cannot or will not be permitted to prove or which he in good faith does not expect to prove. An opening statement is not evidence and to secure a reversal the accused is usually required to establish bad faith in the statement of what the prosecution expects to prove or substantial prejudice resulting therefrom. *Clarke v. State*, 238 Md. 11.

Applying these principles to the case at bar we fail to see where it has been shown that the Assistant State's Attorney acted in bad faith. Apparently, under the impression that the jury had been sitting in civil cases only,

he began his opening statement by discussing the trial procedure in a criminal case. He discussed the meaning of reasonable doubt and what the State expected to prove and stated that anything he said was not evidence. It was only when he began explaining his duties as a prosecutor that counsel for the defendant made an objection. The trial judge immediately called both counsel to the bench and stated that he felt the prosecutor was expressing his own personal opinion on the case which might be proper in argument but not in an opening statement. He stated that he would say nothing to the jury but admonished the prosecutor to confine the balance of his opening statement to a recitation of the facts and reserve argument until later. As the prosecutor sought to explain to the jury what he had said, he was interrupted by counsel for the defendant who stated that was the very thing he had objected to. The objection was overruled and the prosecutor told to proceed. The prosecutor then proceeded to explain to the jury that their findings should not be based upon argument by counsel but only upon credible evidence from the witness stand. He was again interrupted by defendant's counsel, who then stated to the court that what the prosecutor was saying was final argument rather than an opening statement. At this time the court again called both counsel to the bench and warned them that there would be no further interruptions and if either counsel had an objection, he should object and the court would rule on it. The trial judge then stated he would treat defendant's counsel's remarks as an objection and would overrule the objection. The State's opening statement was completed without further interruptions.

Counsel for the defendant made a short opening statement at the conclusion of which the trial court stated: "Members of the jury, you heard only the opening statements of counsel. As I mentioned at the beginning of the trial, don't start making up your minds or talking about the case yet. Wait until you have heard all of the evidence, argument and advisory instructions."

We note that at no time, either during or at the close

of the State's opening statement, did appellant's counsel move for a mistrial or even ask the trial judge for an admonition to the jury. From our review of the record we find no prejudice to appellant's case resulting from the argumentative nature of the State's opening statement. *Roberts v. State,* 4 Md. App. 209.

Appellant further contends that the State's closing argument was so prejudicial as to require a reversal. Since no objection was made at trial to the State's closing argument the question would normally be precluded from consideration on appeal under Maryland Rule 1085.

However, if there had been objection by appellant, we still find no basis for reversal. On appeal, for the first time, appellant points to two instances in the prosecutor's argument. The first was when the prosecutor stated "* * * but I think that he (Mr. Ott) is the type of individual that fits the pattern of the State's theory of the case and that he is typically the type person who might do exactly what was done under the theory of the State's case." Appellant contends that this refers to his prior convictions and it was therefore improper. A reading of the record discloses that this contention is not correct. It is apparent from the record that the prosecutor was referring to appellant's demeanor on the witness stand and his actions at the time of the alleged crime. The other instance was when the prosecutor stated that "We are lucky we are not here today with a murder charge." He then remarked that such situations make Baltimore a big crime area. We feel these remarks are fair comment in argument and certainly do not merit reversal. They are neither misleading nor prejudicial to the appellant. See *Day v. State,* 2 Md. App. 334; *Holbrook v. State,* 6 Md. App. 265; *Chandler v. State,* 7 Md. App. 646.

*Judgment affirmed; appellant to pay costs.*