RONALD RALPH CAIN *v.* STATE OF MARYLAND

[No. 473, September Term, 1976.]

*Decided January 6, 1977.*

The cause was argued before THOMPSON, MOYLAN and LISS, JJ.

*John F. Fader, II, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr,, State's Attorney for Cecil County,* and *Paul S. Podolak, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

 

Liss, J., delivered the opinion of the Court.

Ronald Ralph Cain, appellant, was convicted in a jury trial (Mackey, J., presiding) in the Circuit Court for Cecil County of the crimes of possession with intent to distribute LSD, possession with intent to distribute marijuana and assault. He received a five-year sentence in each of the cases to be served concurrently.

Appellant seeks the reversal of these convictions and raises two questions to be decided in this appeal: (1) Was the evidence sufficient to convict the appellant of the possession of drugs with intent to distribute?; and (2) Was the evidence sufficient to convict the appellant of the crime of assault? We shall respond to the first question in the negative and reverse; we answer the second in the affirmative and shall affirm.

In deciding these issues, it is necessary for us to examine the testimony adduced at the trial. Joseph Boykevitch, a special agent of the Justice Department, was assigned to investigate one Burton Charles, a reputed drug dealer. The narcotics agent was able to make contact during the final week of September in 1975 and purchased a quantity of LSD from Charles at a trailer park where he occupied a converted school bus.

During the next seven weeks a series of meetings took place between Charles and the agent; and on at least one occasion when a discussion of the sale of drugs occurred between Charles and the agent, Cain was present.

The bus was kept under surveillance for an appreciable length of time during which period appellant was observed visiting the bus on a number of occasions. Appellant was also seen changing his clothes in the bus and on one occasion was observed taking a bath in a stream near the bus. At no time was there any conversation about drugs between the appellant and Charles in the presence of the agent, nor was there ever any conversation concerning the use or purchase of drugs between appellant and the agent.

Charles and the converted bus were under surveillance for a number of weeks, but no evidence of drug activity by Cain

was generated by this observation. Cain was never observed sleeping in the bus. On one occasion, out of the presence of Cain, Charles allegedly told the agent that if he had trouble contacting Charles, the agent should contact Cain who would deliver a message. No such incident occurred during the time of surveillance. The converted bus was apparently a hangout for a number of people in the area. The agent also testified concerning the activities of a Miss Keller who frequented the bus, used it to change clothes and was, he believed, the paramour of Charles. Miss Keller was also charged and convicted in this case but is not a party to this appeal.

On one of the visits of the narcotics agent to the vicinity of the bus, Charles pulled a .38 caliber loaded revolver, stuck it in the officer's face and ordered him to leave. Cain, who was present, urged Charles to shoot. The officer was certain the gun was loaded because he could see the lead-nosed parts of the bullets sticking out of the chamber.

Several weeks later, during which period surveillance continued, the agent obtained a search and seizure warrant and seized substantial amounts of LSD, phenobarbital, marijuana, hashish and other drugs. All of the drugs were found in the converted bus in a refrigerator which did not work, or in a dresser in the bus. Some of the marijuana paraphernalia was in open view. The officer conceded that on the occasions he purchased drugs from Charles, the appellant was not present. Cain and Miss Keller were arrested at the time of the search and seizure but no prohibited substances were found on their person.

Charles testified for the defense at the trial. He admitted that he sold drugs from the bus which he occupied but denied that either appellant or Keller was involved. He testified that appellant had spent a few nights at the bus with him but had no access to or knowledge of the drugs on the bus; he never participated in the sale of drugs nor did he ever introduce any customers to him. Charles did not recall the incident of the gun being pulled on the narcotics agent but did remember ordering him to leave because the agent was drunk and used vulgar language.

After the testimony had been completed, the trial court denied appellant's motions for a directed verdict of acquittal, the case was submitted to the jury, and appellant was convicted.

Appellant vigorously contends that the evidence presented by the State was legally insufficient to convict him of possession of drugs with intent to distribute them. We agree with this contention.

It is well settled that possession of narcotic drugs under the Maryland law need not be sole possession; there may be joint possession and joint control in several persons. The duration of possession and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of title. *Folk v. State*, 11 Md. App. 508, 275 A. 2d 184 (1971).

Judge Moylan in *Folk*, made an excellent, exhaustive survey of the numerous cases that we have had before us in which the sufficiency of the evidence to prove joint possession was in issue. After reviewing the factual situation in each of the cases cited in *Folk*, Judge Moylan found the common thread running through all the cases negating joint possession to be: (1) the lack of proximity between the defendant and the contraband, (2) the fact that the contraband was secreted away in hidden places not shown to be within his gaze or knowledge or in any way under his control, and (3) the lack of evidence from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use of the contraband. *See, Haley, Peterson and Roberts v. State*, 7 Md. App. 18, 253 A. 2d 424 (1969); *Wimberly v. State*, 7 Md. App. 302, 254 A. 2d 711 (1969); *Scott v. State*, 7 Md. App. 505, 256 A. 2d 384; and *Barksdale v. State*, 15 Md. App. 469, 291 A. 2d 495 (1972).

The evidence viewed in the light most favorable to the State reveals no more than: When the arrests were made, the appellant was one of a number of persons in the general vicinity of the bus. The officers indicated that none of these other individuals were arrested because they were believed to be merely customers of the entrepreneur, Mr. Charles. The principal contraband was found in the refrigerator in

the rear of the bus, although some marijuana and a pipe were in plain view on a dresser. We think it is a fair inference that the appellant knew that Charles was engaged in the sale of drugs but we do not believe there was evidence from which it might be fairly inferred that the appellant was a participant in the nefarious trade. We note that Charles and the bus were under surveillance for a period of more than six weeks and that there was no evidence of the appellant's involvement in any unlawful activity during that entire period.

The narcotics agent testified that it was his understanding that the appellant's residence was the bus which had been raided, and he gave the following account as the reasons for his assumption:

"Q Now, why did you base your assumption on the fact, was you saw them there five or six times? [Sic]

"A The number of occasions that I saw them there; on a number of occasions I saw Miss Keller with access to the particular bus, Mr. Cain with access to the bus, change of clothes in the bus. They actually changed clothes in front of me; not a complete change of clothes, coats, sweaters, jackets, things of this nature. Mr. Charles on one occasion told me that if I had trouble contacting him, I should contact Mr. Cain. On one particular occasion Mr. Cain was taking a bath in the stream while I was there. Miss Keller was there on numerous occasions; again she was changing clothes. Her vehicle, the vehicle that she normally driving was there. The laundry was done by her, was taken to and from that particular location. There were clothes hung out on the clothesline. And in my experience that would tell me, including the fact that I could not ascertain an address on either of the individuals other than the box numbers, that they would be living at that particular location. I had no trouble contacting, if I wanted to, I had no trouble contacting either one of them.

"Q So from all these factors, you assumed that both these individuals lived with Burton Charles at the bus?

"A Yes, and what I was told."

The record is silent as to specifically what information led the agent to believe that the bus was the residence of Cain or Keller, as to who supplied the information, if anyone and under what circumstances that information was received by him.

No papers, mail or other personal effects of appellant were found in the bus after the arrest. It is significant, we believe, that not only was there no testimony as to appellant's participation in the sale of drugs but there was not even any evidence to suggest that he was a user of drugs. No proof of needle marks was offered nor was there any suggestion that he used drugs during the six or seven week period of surveillance. There was never any discussion as to drugs nor any financial transaction between the officer and the appellant. In view of these facts we believe that the appellant's motion for judgment of acquittal as to the counts charging possession of LSD and marijuana with intent to distribute should have been granted.

In order to sustain a verdict of guilty in a case of this kind, there must be sufficient evidence from which the triers of the fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. In *Metz v. State*, 9 Md. App. 15, 23, 262 A. 2d 331, 335 (1970), we stated the test as to the sufficiency of evidence:

"To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged."

We do not believe the test has been met as to the narcotics convictions of the appellant.

We reach an entirely different conclusion regarding the appellant's conviction of assault. Count Five of the indictment charged the appellant with assault and battery; there was no evidence of a battery by the appellant on the person of the narcotics agent. The record reveals, however, that the trial court correctly called this to the attention of the jury before the case was submitted to it for its consideration. The court said:

> "And you should, you should disregard those two words, and battery, there on Count Five on the first page, Mr. Foreman. That is an error. It's simply assault on the Special Agent. There was no touching of the Special Agent, so it's just assault, if at all, if guilty at all."

There was no objection to the court's instruction to the jury, nor is there any suggestion that the jury instructions given by the trial court were incorrect. The jury found the appellant guilty of *assault*, and the trial court imposed sentence, "as a punishment for his offense under Count Five, *which is the assault offense.*"

While Maryland Rule 716 (a) states that only one offense may be charged in a single count of an indictment, assault and battery is an exception to that rule. Thus every battery includes an assault so that on an indictment for assault and battery, one may be convicted of assault only. See 1 Hawkins, *Pleas of the Crown*, c. 15, Sec. 2; *Massey v. State*, 7 Md. App. 615, 256 A. 2d 614 (1969); *Ayre v. State*, 21 Md. App. 61, 318 A. 2d 828 (1974).

Assault has been defined as "an attempt or offer, with unlawful force or violence, to do a corporal hurt to another." Clark and Marshall, *Law of Crimes* (Seventh Edition), Sec. 10.15.

In *Ott v. State*, 11 Md. App. 259, 265, 273 A. 2d 630 (1971), we held that, "[t]he exhibition of a gun to a victim in such a manner as to cause apprehension that it would be used to inflict harm upon him is an assault." There can be no question that the narcotics agent's testimony that Charles pointed a loaded gun at his face was sufficient to sustain a

conviction for assault against Charles. The sole question in this case is whether there were other facts sufficient to convict Cain as a participant in the assault. There is evidence that while it was Charles who pointed the gun at the agent's face, the appellant encouraged him to fire the gun.

We believe *Coleman v. State*, 4 Md. App. 386, 390, 243 A. 2d 24, 27, (1968) is dispositive of this issue. We there said:

"As the crime of assault is a common-law misdemeanor in Maryland, and as all participants therein are chargeable as principals . . . the question before us is whether there was any legally sufficient evidence showing that appellant participated in the crime, *i.e.*, that he knowingly, voluntarily, and with common criminal intent with the other participants assaulted [the victim] or that he advocated, encouraged, aided or abetted in the commission of the crime . . . To be an 'aider' a person must assist, support or supplement the efforts of another; to be an 'abettor' a person must instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance. . ." (Citations omitted).

Applying the test of *Metz, supra*, we believe the evidence was such that the triers of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the assault charged.

> *Judgments reversed as to counts 1 and 3: judgment affirmed as to 5th count, costs to be divided between appellant and Cecil County.*