684 A.2d 491

**Antoine D. HOWARD**

v.

**STATE of Maryland.**

No. 25, September Term, 1996.

Court of Special Appeals of Maryland.

Nov. 6, 1996.

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for Appellee.

Submitted before MOYLAN, CATHELL and HOLLANDER, JJ.

HOLLANDER, Judge.

Appellant, Antoine Howard, was charged with assault and possession of cocaine. On November 2, 1995, his motion to suppress was denied and he proceeded to trial, pleading not guilty to an agreed statement of facts before the Circuit Court for Baltimore City (Friedman, J.). Appellant was convicted of possession of cocaine and sentenced to four months incarceration. He noted a timely appeal and presents one question for our review, which we have rephrased slightly: Did the suppression hearing judge err in denying appellant's motion to suppress? We conclude that she did not err.

## FACTUAL BACKGROUND [1]

On August 19, 1995, at approximately 7:50 p.m., Officer Reginald McNeil and Sergeant James Sharp of the Baltimore City Police Department responded to 1411 Mosander Way for a call of an assault. At the scene, Officer McNeil met with the victim, Keith Stancill, who informed the officer that he had been approached by appellant and his companion in the 1400 block of Mosander Way and that they had argued over money. A fight ensued and appellant and his companion struck the victim with their fists. The victim suffered no apparent injuries. Following the assault, appellant and his companion

---

1. As appellant's sole challenge is to the denial of his motion to suppress, our summary only reflects evidence presented at the motion hearing.

fled in a light-colored Dodge bearing Maryland license plate number CNP606.[2] The victim declined to file a report and Officer McNeil left the scene.

Shortly thereafter, at approximately 8:45 p.m., Officer McNeil returned to 1411 Mosander Way in response to a second call of an assault. The victim informed Officer McNeil that appellant and his companion had returned. According to the officer, Stancill was scared that he was "going to get hurt" and wanted to "make a report." A witness, Ms. Bullock, who resided at 1411 Mosander Way, where the victim was staying, told Officer McNeil that she called 911 because the men banged on her door and attempted to gain admittance to her house, looking for the victim. Ms. Bullock also reported that the men were carrying guns.

Officer McNeil described Stancill as frightened. The officer testified that the victim confirmed "that the guys were banging on the door looking for him." Officer McNeil also stated that, when appellant and his companion appeared at Ms. Bullock's residence, Stancill "was yelling in the background [to Ms. Bullock] not to let them know that he was there, not to open up the door." When the men did not gain entry to Ms. Bullock's residence, they left.

While Officer McNeil was taking a report, a man identified as Riv arrived on the scene in an automobile. Riv stated that appellant and his companion were still in the area driving the Dodge previously identified by the victim. Officer McNeil broadcasted a description of the vehicle and the information regarding the weapons.

Within minutes, Sergeant Sharp spotted the vehicle only two blocks from the Mosander Way address. He stopped the vehicle and removed appellant and his companion from it. He executed a "felony car stop", referring to a "high-risk car stop", because he thought the men were armed. Although the

---

2. Officer McNeil later clarified that he could not recall if the victim gave him a partial or an entire license plate number or if he obtained the entire number after the vehicle had been stopped.

men were patted down for weapons and the vehicle was checked, no weapons were recovered. The victim was brought to the scene and identified both men as the individuals who had assaulted him. Officer McNeil then arrested both men. In a search incident to appellant's arrest, four black-topped vials containing a white rock-like substance were recovered from appellant's person.[3]

At the hearing, Officer McNeil explained that appellant was not charged with aggravated assault because no weapons were recovered. He said, "I mean, for aggravated assault you need a weapon."

At the conclusion of the suppression hearing, appellant's counsel argued, in part, as follows:

> The arrest must be lawful or the search incident thereto is no good.
>
> \* \* \* \* \* \*
>
> Art. 27, Section 594(B). It spells out to us ... what they can and cannot do in terms of arresting. This case simply does not fall within anything in there.
>
> \* \* \* \* \* \*
>
> This is not a felony. The charge is common law assault.
>
> \* \* \* \* \* \*
>
> It did not happen in their presence. The officers, both of them on the witness stand, on cross-examination and direct, I did not see the assault happen, nor did I even ever see the victim, the so-called victim and the so-called defendants, together. Therefore, it is simply not within their presence. I don't know how he can really even argue that.
>
> The only possible link that he even comes even close to, but not close enough, is, is this the common law crime of assault when committed with the intent to do great bodily harm. Again, you heard the case. The first assault, if it even occurred, was a "fight," whatever that means, with no

---

3. At trial, evidence was presented that subsequent laboratory analysis of the four vials revealed that they contained cocaine.

injury, no injury visible to the officers, no injury reported by the victim, no weapons, no nothing.

A fight may not even be an assault, but assuming for the sake of argument that it is, it certainly is not an assault committed with an intent to do great bodily harm.

The second so-called possible assault would be when allegedly they came back to the house with supposedly weapons and banged on the door, without more. That's it. They never got in the house, they never go through the door, they never shot at the door, they never shot at the person, they never threatened to shoot at anybody.

Assuming, again, for the sake of argument, that that all did occur, that's not an assault with the intent to do great bodily harm either, as evidenced, really, by the fact of what the officers ended up charging him with. They investigated it thoroughly, they charged, if anything, if my experience tells me, more than what they can prove. They err on the side of caution by lodging every charge they can.

What they charged was very simply assault, without more. They admitted, no, this was not an aggravated assault. That would be if there's a weapon involved, which they discovered apparently was not because the car went right from the scene, right around the corner, was caught, was searched, and they were searched and there were no weapons, and that's why we don't have a handgun violation, so he can't hang it on that either because there are no guns.

So the bottom line, really, is that the only possible thing it could fall under, it doesn't fall under, it's not a felony. It's not. It's not a misdemeanor committed in their presence. So it has to be an assault when committed with the intent to do great bodily harm, and that [sic] not the evidence.

*　　*　　*　　*　　*　　*

So the arrest here was the arrest for common law assault, when there was finally an ID. That's the arrest. That's not an arrest that they legally could do the way they did it.

Again, not to prohibit prosecution for the assault. They just can't use the evidence they got, and that's the bottom line.

The judge disagreed. She said:

The Court finds that this was a search incidental to a valid arrest. The test is not whether the Defendant was charged with the crime of assault when committed with intent to do great bodily harm. The question is whether the police officer, when the police officer made the arrest without a warrant, had probable cause to believe that the crime of assault, when committed with intent to do great bodily harm, has been committed.

I find that the police officers did have probable cause at that time to believe that.

## STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, we consider only the record of the suppression hearing and not of the trial itself. *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749 (1987) (citing *Jackson v. State*, 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied*, 294 Md. 652 (1982)); *Aiken v. State*, 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied*, 337 Md. 89, 651 A.2d 854 (1995). We also extend great deference to the first-level fact finding of the suppression hearing judge and accept the facts as found, unless clearly erroneous. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State*, 83 Md.App. 341, 346–47, 574 A.2d 356 (1990). *See also Ornelas v. United States*, 517 U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Moreover, we must give due regard to the suppression hearing judge's "opportunity to assess the credibility of the witnesses." *McMillian v. State*, 325 Md. 272, 282, 600 A.2d 430 (1992). *See also Jones v. State*, 111 Md.App. 456, 466, 681 A.2d 1190 (1996) ("[A]n appellate court shall extend great deference to the suppression hearing judge's findings of first-level facts and assessments of credibility, unless those determinations are clearly erroneous as a matter of law.") In addition, we review the evidence in the

light most favorable to the State as the prevailing party. *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Cherry v. State,* 86 Md.App. 234, 237, 586 A.2d 70 (1991).

 Nevertheless, as to the ultimate, conclusory fact of whether the arrest and subsequent search were valid, this Court must undertake its own independent constitutional appraisal by reviewing the law and applying it to the facts of this case. *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Perkins,* 83 Md.App. at 346, 574 A.2d 356. We do not consider whether the arresting officer had a substantial basis for concluding that probable cause existed. Rather, this Court "must make its own *de novo* determination of whether probable cause existed in light of the not clearly erroneous first-level findings of fact and assessments of credibility." *Jones,* 111 Md.App. at 466, 681 A.2d 1190. *See also Ornelas,* 517 U.S. ——, 116 S.Ct. 1657.

### DISCUSSION

Appellant contends that his warrantless arrest for a misdemeanor assault offense was illegal because the assault did not occur in the officer's presence. He claims that even if the police had probable cause to believe that appellant had assaulted the victim, they did not have probable cause to believe that the assault was committed with the intent to do great bodily harm. Appellant argues that such intent was lacking, as there was only a fistfight between the men, the victim sustained no apparent injuries, appellant and his companion did not assault the victim when they had returned to the residence on the second occasion, and no weapons were ever recovered, even though the vehicle was located within minutes after the police broadcasted the description of the vehicle. Therefore, he argues that the search was not incidental to a valid arrest and, accordingly, the judge erred in denying his motion to suppress.

 The Fourth Amendment to the Constitution of the United States, made applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643, 655, 81

S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961), guarantees, *inter alia*, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted). A warrantless search incident to an individual's lawful arrest is one of these exceptions. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973); *Ricks v. State*, 322 Md. 183, 188–89, 586 A.2d 740 (1991). In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court explained:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Id.* at 762–63, 89 S.Ct. at 2040.

Appellant, as we have noted, argues that the arrest was illegal and thus the search incident to it was unlawful. "The legality of the arrest and, therefore, of the reasonableness of the search and seizure incident to the arrest, turns on the law of the State in which the arrest was made, absent a controlling federal statute." *Stanley v. State*, 230 Md. 188, 191, 186 A.2d 478 (1962) (citing *United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948); *Johnson v. United States*, 333 U.S. 10, 15–16, 68 S.Ct. 367, 369–70, 92 L.Ed. 436 (1948); *United States v. Rabinowitz*, 339 U.S. 56, 60, 70 S.Ct. 430, 432–33, 94 L.Ed. 653 (1950)). In Maryland,

warrantless arrests are controlled by Md.Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.), Art. 27, § 594B, which provides in relevant part:

### § 594B. Arrests without warrants generally.

(a) A police officer may arrest without a warrant any person who commits, or attempts to commit, any felony or misdemeanor in the presence of, or within the view of, such officer.

(b) A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have committed such offense.

(c) A police officer may arrest a person without a warrant if the officer has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in the officer's presence or view.

\* \* \* \* \* \*

(e) *A police officer may arrest a person without a warrant if the officer has probable cause to believe:*

(1) *That an offense listed in subsection (f) of this section has been committed;*

(2) *That the person has committed the offense; and*

(3) *That unless the person is immediately arrested:*

(i) *The person may not be apprehended;*

(ii) *The person may cause injury to the person or damage to the property of one or more other persons; or*

(iii) *The person may tamper with, dispose of, or destroy evidence.*

(f) The offenses referred to in subsection (e) of this section are:

(1) Those offenses specified in the following sections of Article 27, as they may be amended from time to time:

(i) Section 8(a) (relating to malicious burning);

(ii) Section 36 (relating to carrying or wearing weapon);

(iii) Section 111 (relating to destroying, injuring, etc., property of another);

(iv) Section 156 (relating to giving a false alarm of a fire);

(v) Section 287 (relating to possession of hypodermic syringes, etc., restricted);

(vi) Sections 342 through 344 (theft) where the value of the property stolen was less than $300;

(vii) Section 33A (relating to breaking into building or boat with intent to steal);

**(viii) The common-law crime of assault when committed with intent to do great bodily harm;**

(ix) Sections 276 through 302 (relating to drugs and other dangerous substances) as they shall be amended from time to time;

(x) Section 36B (relating to handguns);

(xi) Section 388 (relating to manslaughter by automobile, motorboat, etc.); and

(xii) Section 335A (relating to indecent exposure).

[Italics and boldface added].

█ We recently observed that "[a]n arrest of an individual is valid when a police officer has probable cause to believe that the individual has committed a felony or a misdemeanor in the officer's presence or view." *Jones v. State,* 111 Md.App. at 464, 681 A.2d 1190. In this case, it is undisputed that appellant did not commit a felony; assault is a common law misdemeanor. *Cain v. State,* 34 Md.App. 446, 453, 367 A.2d 47 (1977); Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* 692–94 (2d ed. 1986). Nor did the alleged assault occur in the presence of a police officer. Therefore, a lawful arrest could only be made if the alleged offense fell within the terms of §§ 594B(e) and 594B(f)(viii).

Art. 27 § 594 B(e) sets forth several criteria that must be supported by probable cause in order to validate a warrantless arrest for the offense of assault with intent to do great bodily harm, set forth in § 594 B(f)(viii). The statute requires that the officer must have probable cause to believe not only that

the offense was committed, but also that it was committed by the arrestee. In addition, the officer must have probable cause with respect to at least one of the three disjunctive factors listed in § 594 B(e)(3).

 In this case, the trial judge expressly found that the officer had probable cause to believe that the offense of assault with intent to harm had been committed. While she did not articulate a specific finding for each factor listed in § 594B(e), "[j]udges are presumed to know the law. Absent an indication to the contrary, we must assume that judges apply the law correctly to the case before them." *Hebb v. State*, 31 Md.App. 493, 499, 356 A.2d 583 (1976) (citations omitted). *See also Gilliam v. State*, 331 Md. 651, 673, 629 A.2d 685 (1993), *cert. denied*, 510 U.S. 1077, 114 S.Ct. 891, 127 L.Ed.2d 84 (1994) (judges are presumed to know the law and apply it correctly). Moreover, based on her ultimate determination, the court "obviously found the police officers' testimony during the ... hearing to be credible...." *Jones*, 111 Md.App. at 466, 681 A.2d at 1195.

On review, our task is to decide, *de novo*, whether probable cause existed to support the warrantless arrest of appellant. *Jones*, 111 Md.App. at 466, 681 A.2d at 1195. Based on our independent review, we are satisfied that it did.

 "The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State*, 313 Md. 384, 403, 545 A.2d 1281 (1988). *See also Collins v. State*, 322 Md. 675, 680, 589 A.2d 479 (1991); *Malcolm v. State*, 314 Md. 221, 233, 550 A.2d 670 (1988) (quoting *Potts v. State*, 300 Md. 567, 575, 479 A.2d 1335 (1984) (" 'probable cause does not demand the certainty associated with formal trials; it is sufficient that a "fair probability" existed ...' ")). Moreover, it is based on the factual and practical considerations of everyday life on which reasonable people act and is assessed by considering the totality of the

circumstances in a given situation. *Doering,* 313 Md. at 403, 545 A.2d 1281; *Collins,* 322 Md. at 680, 589 A.2d 479 (1991).

Officer McNeil testified that, upon first encountering the victim, he learned that appellant and a companion had accosted the victim, beaten him with their fists, and then fled. A short time later, appellant and his companion returned to the scene seeking the victim. They knocked on the door of the house in which appellant was staying and attempted to gain admittance. According to Ms. Bullock, who resided in the house, they carried handguns. The victim was quite frightened, and feared he would be shot. Indeed, although he declined to file a report after the first incident, he was willing to make a report after the second occurrence. Having been advised that the men had guns, and considering that this was the second incident within a short period of time, coupled with the victim's expressed fear that he would be shot, the police reasonably concluded that, "unless . . . immediately arrested", the "person may cause injury" to another. § 594 B(e)(3)(ii).

 Based on this evidence, the trial court concluded that the police arrested appellant based on probable cause to believe that he committed an assault with intent to do great bodily harm. We agree that the evidence adduced established probable cause to believe that the offense had been committed, that appellant had committed the offense, and that, unless appellant was immediately arrested, he might cause injury to the victim. Although no weapons were recovered from appellant or the vehicle in which he was travelling, an independent witness testified the men had guns. The weapons could have been left somewhere after appellant departed the scene. It is also of no moment that the victim was not injured when appellant returned to the scene carrying the handgun. An assault does not require that the victim sustain an injury. *See Dixon v. State,* 302 Md. 447, 457, 488 A.2d 962 (1985) (quoting R. Perkins, *Perkins on Criminal Law* 114 (2nd ed. 1969) (Maryland recognizes two forms of assault: "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery.")); *Ford v.*

*State,* 330 Md. 682, 699, 625 A.2d 984 (1993) ("An assault by its very nature ... occurs without any touching at all."); *Claggett v. State,* 108 Md.App. 32, 47, 670 A.2d 1002, *cert. denied,* 342 Md. 330, 675 A.2d 992 (1996) ("an assault technically occurs without any touching").

As appellant was subjected to a lawful warrantless arrest, the police were entitled to conduct a search of appellant's person incident to that arrest. *Robinson,* 414 U.S. at 235, 94 S.Ct. at 476–77; *Ricks,* 322 Md. at 188–89, 586 A.2d 740. Accordingly, the suppression hearing judge did not err in denying appellant's motion to suppress.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**