798 A.2d 1

**Brian Charles DOWDY**

v.

**STATE of Maryland.**

**No. 1938, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 7, 2002.

Gill Cochran, Annapolis, for appellant.

Steven Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jerry Barnes, State's Atty. for Carroll County, Westminster, on the brief), for appellee.

Argued Before HOLLANDER, DEBORAH S. EYLER, and JAMES S. GETTY, (Ret'd, Specially Assigned), JJ.

JAMES S. GETTY, Judge, Ret'd, Specially Assigned.

The issue presented by this appeal is whether the Circuit Court for Carroll County (Raymond E. Beck, Sr., J.) erred in denying the appellant's motion to suppress evidence seized from his motor vehicle following a traffic stop. Based upon our independent constitutional review of the law, and applying the law to the facts, we conclude that Judge Beck did not err.

### Facts

On January 24, 2001, at approximately 11:54 p.m., Brian Charles Dowdy, appellant herein, was stopped by Sergeant D. Reitz of the Maryland State Police. Following the stop, appellant was charged with and convicted of failure to drive in a single lane, possession of controlled dangerous substances, possession of drug paraphernalia, and driving while intoxicated.

Sergeant Reitz testified that he had been a traffic officer for 16 years. He described Route 140 in the Finksburg area as a

four-lane highway, divided by a grass median, running east to west. He testified to the following events:

> When I first encountered the vehicle, I noted that it was drifting continuously from side to side in lane number two— going from the edge to the centerline just continuously back and forth and it was drifting rather slow from side to side. It was not driving in a straight line.

On two occasions, according to Sergeant Reitz, appellant moved from the right lane across the broken lane markings, resulting in "the left tires cross[ing] over to the broken lane markings into lane number one." On each occasion, the violation continued for a tenth of a mile. The second cross-over occurred a half mile after the first and, during the second occurrence, one-fourth of the vehicle was across the painted line dividing the two lanes. At that point, Sergeant Reitz stopped the vehicle.

In response to a question asking why he stopped the vehicle, the officer responded:

> Based upon my training and observations, I was stopping that vehicle at that time because I believed that that operator of that vehicle was intoxicated.[1]

After stopping the vehicle, Sergeant Reitz detected a strong odor of alcohol on appellant's breath, his face was flushed, and his speech was slurred. He failed the field sobriety tests and he was arrested for driving while intoxicated. A search incident to arrest produced two baggies of marijuana and a pipe with marijuana residue.

---

1. On cross-examination, Sgt. Reitz was asked:
   Q. . . . You gave two tickets to the defendant, correct?
   A. Yes, I did.
   Q. And the first ticket was . . . failed to drive in a single lane?
   A. That's correct.
   Q. Okay, and then a general article, a 21–902 ticket?
   A. Yes, sir.
   Q. Okay, then you stopped him for failing to drive in a single lane?
   A. That's correct.

### *Discussion*

In reviewing the denial of a motion to suppress, this Court's review is confined exclusively to the record of the suppression hearing. *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491 (1999); *In Re: Tariq A–R–Y*, 347 Md. 484, 489, 701 A.2d 691 (1997), *cert. denied*, 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998). We extend great deference to the fact-finding of the judge presiding with respect to the credibility of witnesses and determining first level facts. *Perkins v. State*, 83 Md.App. 341, 346, 574 A.2d 356 (1990). The evidence is to be reviewed in the light most favorable to the State. *Ferris, supra*, at 368, 735 A.2d 491. As to ultimate, conclusory facts, however, the appellate court makes its own independent, constitutional appraisal by applying the law to the established facts. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990).

### *The Law*

Appellant argues that the arresting officer lacked probable cause for the stop based on the totality of the situation, because appellant's drifting across the center of the two westbound lanes twice in a distance of a mile and a half did not violate Md.Code (1999 Repl.Vol.) sec. 21–309(b) of the Transportation Article ("TA").

Sec. 21–309(b) provides:

(b) *Driving in single lane required.* A vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from that lane or moved from a shoulder or bikeway into a lane until the driver has determined that it is safe to do so.

In support of his argument, appellant cites the holding in *Rowe v. State*, 363 Md. 424, 769 A.2d 879 (2001). The relevant facts in *Rowe* are as follows: A Maryland State Police Officer observed a van being driven in the slow lane of Interstate 95 at 1:00 a.m. The trooper followed the van for 1.2 miles. Within that distance, he observed the van cross the white edge line on the right shoulder approximately eight inches and

touch the rumble strips and then immediately return to the slow lane. Thereafter, the officer observed the vehicle touch the white edge line a second time, which resulted in the stop "for the benefit of the driver . . . late in the evening people fall asleep at the wheel." The officer acknowledged that late night drivers "could have possibly been intoxicated" when not driving within a single lane. The officer determined that Rowe was not intoxicated, but he charged him with failure to drive within a single lane.[2]

The Court of Appeals reversed this Court's affirmance of the trial court's denial of appellant's Motion to Suppress. The Court acknowledged that the purpose of TA sec. 21–309(b) is to promote safety on laned highways. Citing several cases from other jurisdictions, interpreting statutes essentially identical to Maryland's, the Court held:

> We conclude that the petitioner's momentary crossing of the edge line of the roadway and later touching of that line did not amount to an unsafe lane change or unsafe entry onto the roadway, conduct prohibited by § 21–309, and, thus, cannot support the traffic stop in this case.

In this case, at the conclusion of the hearing on appellant's motion to suppress, the trial court reasoned:

> I think that the *Rowe* case is clearly distinguishable from *State v. Dowdy*, both on the facts and the law. Look at the totality of the situation, the experience of the police sergeant who made the stop based on a car passing one quarter of its width into the traveled lane of lane number one from lane number two for a tenth of a mile each time in the space of a mile and a half pace, that there was probable cause to make a stop. So your Motion to Suppress is denied.

The case *sub judice* is distinguishable from *Rowe* factually. Most importantly, the Court in *Rowe* viewed the violation as a

---

**2.** Rowe was driving a rental vehicle issued to another driver, the rental contract had expired, and a consent search of luggage revealed 34,000 grams of marijuana (77 pounds).

"momentary crossing of the edge line of the roadway and later touching of that line did not amount to an unsafe lane change. . . ." Clearly, there was no lane change in *Rowe*—the driver moved eight inches beyond the right edge of the road and touched the rumble strips and immediately returned to the paved road. By contrast, the vehicle in the present case crossed over from the slow lane into the passing lane and remained there for one-tenth of a mile twice. On the second occasion, one-fourth of the vehicle extended into the passing lane. This erratic driving created a potential danger to anyone who may have been proceeding lawfully in the passing lane.

Sgt. Reitz testified that appellant's vehicle was swaying back and forth "continuously from side to side" for the entire mile and a half until it was stopped. This erratic driving was far more egregious than that presented in *Rowe*.

Footnote 1 in *Rowe*, 363 Md. at 427, 769 A.2d 879, explains that if the crossing and touching were justified to determine whether the driver was impaired, detention of the driver after it had been determined there was no impairment is unreasonable under the Fourth Amendment. The driver in *Rowe* was determined not to be under the influence of alcohol. In contrast, Sgt. Reitz testified that he stopped the vehicle because he observed the failure to drive within a single lane and, "Based upon my training and observations and my experiences, I was stopping that vehicle at that time because I believed that that operator of that vehicle was intoxicated." He was correct. Appellant was convicted of driving while intoxicated.

We note that the Court in *Rowe* rested its decision on the fact that a momentary crossing of the shoulder of the road was not sufficient to justify a stop under sec. 21–309(b). The Court did not discuss whether there was probable cause or reasonable articulated suspicion supporting the stop. In addition to establishing under the totality of the circumstances that appellant was in violation of sec. 21–309(b), which established probable cause for the stop, we conclude that the stop

in this case involved sustainable, articulable suspicion that "criminal activity is afoot," *i.e.*, driving while intoxicated.

The Supreme Court stated in *Illinois v. Wardlow*, 528 U.S. 119, 123–34, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000):

> While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The officer must be able to articulate more than an "inchoate" and unparticularized suspicion or "hunch" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Probable cause means "a fair probability that contraband or evidence of a crime will be found." *Sokolow, supra; accord Birchead v. State*, 317 Md. 691, 700, 566 A.2d 488 (1989). Probable cause requires "less evidence for such belief than would justify conviction, but more evidence than would arouse a mere suspicion." *Carroll v. State*, 335 Md. 723, 735, 646 A.2d 376 (1994). It is assessed by considering the totality of the circumstances of a given situation. *Collins v. State*, 322 Md. 675, 679, 589 A.2d 479 (1991); *accord Howard v. State*, 112 Md.App. 148, 684 A.2d 491, *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997).

Officers with years of experience and specialized training may draw on their expertise to make inferences and deductions about the cumulative evidence that an untrained person could not articulate. A reviewing court, therefore, must give due weight to factual inferences drawn by such officers. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The recent case of *Edwards v. State*, 143 Md.App. 155, 792 A.2d 1197 (2002), is instructive on the issue raised herein. The officer who effected the traffic stop in that case, pursuant to sec. 21–309 of the Transportation Article, testified that on three occasions he observed a vehicle on Md. Route 152, a

two-lane highway with a centerline separating north and south traffic, crossing the centerline. The incident occurred at 3:15 a.m. on October 24, 2000. According to the officer, the Dodge Caravan crossed over the centerline approximately one foot and "the distance that the vehicle traveled in which it crossed the center line was approximately a quarter mile." There was no evidence of intoxication, and the officer did not notice any other traffic at that late hour.

A passenger in the vehicle was charged and convicted of possession of marijuana and a dangerous weapon, a knife. These items were recovered after the police detected a strong odor of burnt marijuana in the vehicle and searched the van. Edwards's motion to suppress the evidence alleged a violation of sec. 21 309, citing the holding in *Rowe*.

This Court (Hollander, J.) affirmed the trial court's denial of the motion to suppress. Considering the record as a whole, we concluded that crossing the line into an oncoming traffic lane is inherently dangerous and qualitatively different from the situation in *Rowe*.[3]

Applying the totality of the circumstances test, we conclude that Judge Beck did not err in denying appellant's motion to suppress for violation of sec. 21–902 of the Transportation Article. Alternatively, the stop was sustainable under either probable cause or articulable suspicion that appellant was intoxicated.[4]

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**3.** Appellant herein seeks to bolster his argument by pointing out that there was no oncoming traffic, which has nothing to do with "changing lanes when it is safe to do so." The objective is to promote safety on the highway. A violation of sec. 21–309(b) does not depend on the occurrence of a collision or a "near miss."

**4.** Appellant suggests that the absence of traffic on the highway indicates there was no issue of danger to others on the highway. We concede that no accident occurred, but the purpose of the stop is to determine if a driver should be arrested for his own protection and for the safety of others on the highway.